**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KYLE C. PIATT, | ) | CASE NO. 3:24-CV-00096-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| WARDEN HAROLD MAY, | ) | |
| | ) | **ORDER** |
| Defendant, | ) | |

**I. Introduction**

Petitioner, Kyle Piatt, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Piatt is currently on APA supervision after serving a five-year prison term for sexual battery. Piatt asserts two grounds for relief. (ECF No. 1). Respondent, State of Ohio, filed a return of writ on June 11, 2024. (ECF No. 8). Piatt filed a traverse on July 22, 2024 (ECF No. 10).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Piatt's petition and other case-dispositive motions. Because Piatt's habeas petition is untimely, I recommend that the Court dismiss his petition in its entirety and not grant him a certificate of appealability.

**II. Relevant Factual Background**

The Ohio Court of Appeals for the Ninth Appellate District set forth the following facts[1] on direct appeal:

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

1

{¶2} Piatt and A.M. share one child together and had an on again/off again relationship for years before the events herein transpired. Their relationship was fraught with turmoil and, at times, erupted into physical violence. A.M. would occasionally strike Piatt and he, in turn, would hit, choke, or otherwise use force against her. He also would frequently subject her to mentally abusive behavior. While A.M. recognized that their relationship was unhealthy, she nonetheless maintained contact with Piatt. She indicated that she did so because she loved him, but also because he would threaten suicide or otherwise plead for help when she tried to end things between them.

{¶3} At the beginning of 2018, while experiencing a break in their relationship, Piatt and A.M. independently sought court intervention. Piatt named A.M. and their son in a paternity suit to establish his parental rights. Meanwhile, A.M. filed for a domestic violence civil protection order ("CPO") against Piatt. The CPO issued on February 1, 2018, but, even after its issuance, Piatt and A.M. routinely contacted one another. They met twice on May 10th, and their second encounter that day is the subject of the instant appeal.

{¶4} A.M. was driving nearby Piatt's residence on the afternoon of May 10th when she realized that he was tailgating her. He followed her until she drove to his residence, and, once she stopped, Piatt removed their son from her car. Piatt carried their son inside a recreational vehicle ("RV") he kept parked in the driveway. After A.M. followed him inside, the two had vaginal intercourse. According to A.M., she repeatedly tried to reject Piatt's advances, but he ignored her protests. According to Piatt, the sex was consensual. A.M. left Piatt's residence with their son shortly thereafter, and, over the next few days, the two exchanged messages on their cell phones. On the sixth day, A.M. visited the police station and reported that Piatt had engaged in unwanted sexual intercourse with her.

*State v. Piatt*, 2020-Ohio-1177, ¶¶ 2-4, 153 N.E.3d 573, 577–78 (9th Dist. Ohio March 30, 2020).

### III. Relevant State Procedural History

#### A. Indictment and Conviction

As a result of the foregoing incident, a grand jury indicted Piatt on one count of sexual battery in violation of R.C. 2907.03(A)(1). The matter proceeded to trial, and a jury found him guilty. The trial court then sentenced him to five years in prison and classified him as a tier III sexual offender.

*Piatt*, 2020-Ohio-1177, ¶5.

#### B. Direct Appeal

On appeal, Piatt raised ten assignments of error:

1. The Trial Court Erred When It Admitted Evidence of Prior Acts.

2. The Trial Court Erred When it Continued to Allow Leading Questions from the Prosecutor throughout the Direct Examination of the Alleged Victim.

2

3. The Trial Court Erred When It Did Not Recuse Itself from Sentencing Appellant.

4. The Trial Court Erred When it Applied R.C. 2907.03(A)(1) in an Unconstitutional Manner.

5. The Trial Court Erred When it Found Appellant Guilty Without a Finding of Actus Reus.

6. Inherent Vagueness of Laws Taking Appearance into Account.

7. Insufficient Evidence that Appellant Acted Knowingly.

8. The Trial Court Erred When It Convicted Appellant against the Manifest Weight of the Evidence.

9. Outrageous Results Violate the 14th Amendment.

10. The Appellant Received Ineffective Assistance of Counsel.

(ECF No. 8-1, Ex. 11 at PageID #: 95). The State of Ohio filed an Appellee's brief (*Id.*, Ex. 12). Piatt replied in support. (*Id.*, Ex. 13). On March 30, 2020, the state appellate court overruled Piatt's error assignments and affirmed his conviction and sentence. *Piatt*, 2020-Ohio-1177, ¶ 51.

### C. Appeal to the Ohio Supreme Court

On October 14, 2021, through counsel, Piatt filed a notice of appeal and motion for leave to file a delayed appeal to the Ohio Supreme Court. (ECF No. 8-1, Exs. 15 & 16, respectively). On December 14, 2021, the Ohio Supreme Court granted his motion. (*Id.*, Ex. 17). In his Memorandum in Support of Jurisdiction, Piatt presented the following propositions of law:

1. The improper introduction of prior bad acts to bolster witness credibility constitutes a violation of one's Sixth Amendment Right to a fair trial.

2. The introduction of prior bad acts to prove an element of the charged offense inverts the standard of proof, thereby denying one's Sixth Amendment Right to a fair trial.

3. Regardless of whether a biased judge is requested to recuse his or herself, they should, of their own accord, recuse themselves when statements are made open and public courtroom expressing their obvious bias towards or against a defendant to ensure defendant has a fair trial in accordance with the Sixth Amendment.

(*Id.,* Ex. 18). The State waived response. (*Id.,* Ex. 19). On March 15, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.,* Ex. 20, Case No. 20211275). *State v. Piatt*, 184 N.E.3d 97 (Ohio 2022).

### D. Petition to Vacate

On July 5, 2022, Piatt, through counsel, filed a petition to vacate or set aside the judgment of conviction or sentence. (ECF No. 8-1, Ex. 21). Piatt alleged that trial counsel was ineffective for failing to call two witnesses – his sisters Laura Pumphrey and Carrie Piatt –, and for failing to request a continuance when Charlie Siders failed to comply with his subpoena. He further alleged that he was entitled to a new trial based on new evidence of A.M.'s lack of credibility. (*Id.*) He attached to the petition: Exhibit A - Affidavit of Laura Pumphrey, Exhibit B - Affidavit of Carrie Piatt, Exhibit C - Complaint and Affidavit of Case 2019 JUV C 001157, Exhibit D - Ohio Department of Rehabilitation and Correction Kyle Piatt Admission Information and Exhibit E- Affidavit of Charlie Siders. The State filed a response. (*Id.*, Ex. 22). Piatt moved for leave to file his post-conviction petition out of time and attached his own affidavit. (*Id.*, Ex. 23). On August 23, 2022, the court dismissed Piatt's petition because it was untimely and Piatt had not shown that he was unavoidably prevented from discovering the factual basis of his claims in a timely manner. (*Id.*, Ex. 24, Case No. 2018-CRC-I-000289).

Piatt appealed to the Ninth District Court of Appeals, raising the following assignments of error:

1. THE TIMING OF THE APPEAL DURING THE COVID-19 PANDEMIC PUT A SIGNIFICANT STRAIN ON THE ATTORNEY-CLIENT PRIVILEGE AND THE ABILITY TO COMMUNICATE, RESULTING IN MR. PIATT BEING UNAVOIDABLY PREVENTED FROM DISCOVERING THE MATERIALLY EXCULPATORY EVIDENCE.

> 2. MR PIATT'S CLAIM IS NOT BARRED BY RES JUDICATA BECAUSE IT WAS NOT ACTUALLY LITIGATED AND COULD NOT HAVE BEEN LITIGATED AT THE TIME OF TRIAL.
>
> 3. THE CUMULATIVE EFFECT OF THE INABILITY TO OFFER IMPEACHMENT EVIDENCE ON MULTIPLE FRONTS AGAINST THE COMPLAINING WITNESS, A.M., RESULTED IN PREJUDICE, WOULD HAVE SERVED TO UNDERMINE THE CONFIDENCE OF THE JURY'S VERDICT.

(*Id.*, Exs. 25-26). The State of Ohio filed a responsive brief (*Id.*, Ex. 27) and Piatt filed a reply brief. (*Id.*, Ex. 28). On August 7, 2023, the appellate court affirmed the judgment of the trial court. (*Id.*, Ex. 29, Case No. 22AP0048). *State v. Piatt*, No. 22AP0048, 2023-Ohio-2714 (Ohio Ct. App. Aug. 7, 2023). The court upheld the ruling of the trial court that the petition was untimely, finding that COVID did not justify the late filing because Piatt was aware or could have been aware of the information at trial. *Id*. at *4-5.

Piatt did not appeal to the Ohio Supreme Court.

## IV. Federal Habeas Corpus Petition

Through counsel, Piatt asserts that 1) his trial counsel was ineffective for failing to enforce the subpoena of Charlie Siders and for failing to request a continuance of the trial when Mr. Siders did not appear to testify at trial; and 2) that the trial court violated his Sixth Amendment right to a fair trial by allowing the State to introduce evidence of prior bad acts. (ECF No. 1, PageID #: 3-5). In support, Piatt includes the following:

> 15. Piatt's Sixth Amendment Right to counsel was violated as trial counsel was ineffective by failing to enforce Piatt's right to compulsory process by failing to enforce the properly served subpoena for material witness, Charlie Siders, who would have challenged the credibility of the State's only witness, thereby directly negatively impacting the results of trial.
>
> 16. Trial counsel was ineffective for failing to request a continuance of the trial and the state court violated Piatt's due process rights and right to compulsory process by failing to issue a continuance for

5

nonappearance of a material witness. *United States v. Shaver*, 2023 U.S. Dist. LEXIS 61589, *28.

17. The Sixth Amendment provides that in criminal prosecutions, the accused shall enjoy the right "to have compulsory process for obtaining witnesses in his favor." The Compulsory Process Clause of the Sixth Amendment is violated when a criminal defendant is arbitrarily deprived of testimony that would have been relevant and favorable to the defense. *Id.* at 867; *Washington v. Texas*, 388 U.S. 14, 18, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967).

18. Trial counsel subpoenaed a witness named Charlie Siders to testify on Mr. Piatt's behalf as evidenced by the trial court docket. Mr. Siders would have testified that he and the complaining witness, AM, had consensual sex with one another immediately following her allegedly being sexually assaulted by Mr. Piatt. This was sworn to in Exhibit E, attached and submitted to the trial court in support of the Motion to Vacate or Set Aside the Judgment. Immediately following the encounter AM and Mr. Piatt had with one another, AM confessed to Mr. Siders, whom she was having a romantic relationship with, that she, AM, and Mr. Piatt, had sex with one another, despite AM and Mr. Siders being in a relationship. Mr. Siders would have testified that AM never stated that Mr. Piatt raped her. Mr. Siders was the first person AM saw immediately following the alleged sexual assault, and notably, AM did not tell Mr. Siders that she was raped. Instead, AM informed Mr. Siders that she and Mr. Piatt, the father of her child, had sex. Mr. Siders was a known witness to the defense. He was subpoenaed to appear, and failed to appear. Trial counsel for Mr. Piatt failed to request a continuance, and failed to request a material witness warrant, despite Mr. Siders being a material, necessary witness.

19. "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d at 490, 739 N.E.2d 749. However, in the underlying case, the violation of Piatt's right to effective counsel is evidenced by the decision to subpoena a material witness- Charlie Siders- and the then lack of action and enforcement of a properly served subpoena- the result of which deprived Piatt of his due process rights and fair trial.

20. This failure to enforce a subpoena, failure to request a material witness warrant, and failure to request a continuance does not constitute trial strategy. ***

6

> 25. The introduction of prior bad acts to prove an element of the charged offense inverted the burden of proof, placing it on Piatt, thereby denying Piatt of Sixth Amendment Right to a fair trial.
>
> 26. It is prejudicial, reversible error to allow the State to introduce evidence of prior bad acts to enable burden shifting regarding the standard of proof, which resulted in the wrongful consideration of the complaining witness's mental state. Specifically, the trial court erred by allowing the State to introduce evidence of prior bad acts, that of a certain look Mr. Piatt supposedly gave to A.M., caused her to be in fear or submit to his coercion. By shifting the burden, and requiring Kyle Piatt to defend against an involuntary look his face apparently portrayed during the alleged incident, as opposed to the State of Ohio to their burden regarding the defendant's mental state, Mr. Piatt was unfairly prejudiced and his constitutional rights were violated.

(ECF No. 1, PageID #: 3-5).

**V.      Discussion**

     **A. Statute of Limitations under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus under 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A conviction becomes final under § 2244(d)(1)(A) when direct review concludes, not when the petitioner has exhausted all state remedies. *See Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001); *see also Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000) (noting that the one-year limitations period under § 2244(d)(1)(A) does not begin to run until the day after the petition for a writ of certiorari was due in the Supreme Court). Where, such as here, a petitioner has appealed his conviction to the state supreme court on direct appeal, the conviction becomes final for purposes of the one-year habeas limitations period when the ninety-day period for seeking a writ of certiorari from the Supreme Court of the United States expires. *Cobb v. Larose*, No. 5:18 CV 452, 2018 WL 5288394, at *1 (N.D. Ohio Sept. 28, 2018), *report and recommendation adopted*, No. 5:18CV452, 2018 WL 5279324 (N.D. Ohio Oct. 24, 2018) (citing *Lawrence v. Florida*, 549 U.S. 327, 333 (2007)). The habeas one-year statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lopez v. Wilson*, 426 F.3d 339, 351-52 (6th Cir. 2005) (*en banc*) (holding that a motion to reopen under Ohio R. App. P. 26(B) is a collateral proceeding). A post-conviction relief petition is considered "properly filed" only if it meets the applicable state rules governing filing. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004). "[T]ime limits, no matter their form, are 'filing' conditions." *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). Untimely post-conviction petitions or other collateral motions do not toll the AEDPA statute of limitations, despite any exceptions to the timely filing requirement that might exist under state law. *See id.* at 413-14.

B. **Untimely Petition**

The Warden argues that Piatt's AEDPA statute of limitations began running on June 14, 2022 – ninety days after the Ohio Supreme Court declined jurisdiction on March 15, 2022. (ECF

8

No. 8 at 20). As such, the Warden argues that Piatt's instant habeas corpus petition was due on June 14, 2023. Piatt does not contest the Warden's calculation, but rather requests that the Court consider his petition based upon equitable tolling of the limitations period and/or actual innocence. Piatt argues that to comply with 2244(d)(1), he would have needed to file his habeas petition prior exhausting the state court remedy, specifically his petition for post-conviction relief, which he filed on July 5, 2022. Piatt argues that the earliest he could have filed his habeas petition was the denial of his post-conviction petition in August 2023.[2]

Piatt's conviction became "final" for statute of limitations purposes when the ninety-day period for seeking certiorari from the United States Supreme Court expired on June 13, 2022. *See Lawrence*, 549 U.S. at 333 (citing *Clay v. United States*, 537 U.S. 522, 531 (2003)); *Bronaugh*, 235 F.3d at 283. The period of limitations began to run on the following day, June 14, 2022, and ended one year later on June 14, 2023. Fed. R. Civ. P. 6 (a); § 2244(d)(1)(A). Piatt filed the instant petition on January 17, 2024, seven months after the AEDPA statute of limitations expired. Thus, the Warden is correct that the instant petition is untimely.

---

[2] The Warden also argues that Piatt's petition for post-conviction relief did not toll the limitations period under 28 U.S.C. § 2244(d)(2) as it was untimely filed. Piatt does not argue that he is entitled to statutory tolling of the limitations period, nor could he do so successfully. Statutory tolling applies only to applications for state collateral review that are "properly filed." 28 U.S.C. § 2244(d)(2). "[A]n application is properly filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the time limits upon its delivery." *Board v. Bradshaw*, 805 F.3d 769, 772 (6th Cir. 2015) (internal citations and quotation marks omitted). Therefore, if a state court rejects a post-conviction petition as untimely, then that petition was not "properly filed" for purposes of the statutory tolling provision. *See Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018) (citing *Pace*, 544 U.S. at 413; *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003)).

Here, the state court dismissed Piatt's post-conviction petition as untimely, and the court of appeals affirmed. That ruling is binding on this court. *See Vroman*, 346 F.3d at 604 (explaining that a federal habeas court "does not function as an additional state appellate court reviewing state-court decisions on state law or procedure"; rather, "[f]ederal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state" (citations omitted)).

### C. Equitable tolling

Because AEDPA's statute of limitations is not jurisdictional, it is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly" by this Court. *See, e.g., Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011); *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009). If a petitioner seeks equitable tolling, he must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418).

Piatt argues that his petition is entitled to equitable tolling because he was unable to file his habeas petition until after exhausting his grounds in state court, which was not completed until August of 2023 – sixty days outside the § 2244(d)(1) deadline. Piatt argues that the delay in filing his post-conviction petition was due to his ineffective assistance of appellate counsel together with circumstances related to the COVID-19 pandemic. (ECF No. 10 at 14-18). The Warden argues that Piatt is not entitled to equitable tolling because he "failed to show that he exercised due diligence in pursuing his rights. He unnecessarily delayed filing his post-conviction petition which resulted in his untimely filing of his federal habeas petition." (ECF No. 8 at 21).

Piatt argues that he could not have discovered the basis of his underlying claims earlier because the COVID-19 pandemic prevented him from beneficial communication with his attorney and that he did not timely file his post-conviction petition timely because he believed that his appellate attorney had agreed to filing the petition. (*See* ECF No. 10 at 14-18). This Court, however, does not act as an appellate court in review of state court determinations on timeliness of post-conviction petitions. *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003).

10

(explaining that a federal habeas court "does not function as an additional state appellate court reviewing state-court decisions on state law or procedure"; rather, "[f]ederal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state" (citations omitted)). Piatt's arguments focus on his diligence in pursuing his rights in Ohio state post-conviction proceedings, not on his diligence in timely filing a habeas petition. (*See* ECF No. 10 at 14-18). This Court, however, must determine whether Piatt pursued his federal rights diligently and whether an extraordinary circumstance stood in his way.

Piatt has not shown that he has been diligent in pursuing his rights. The relevant inquiry in determining whether equitable tolling applies is whether Piatt was diligent in pursuing federal habeas relief. In this case, Piatt waited over 580 days—from June 14, 2022 until January 17, 2024—to file his habeas petition after his conviction and sentence became final. Although the petition is based, in part, on purported new evidence, Piatt discovered this evidence prior to the close of direct review.[3] Piatt's argument that he "could not" file a habeas petition until having exhausted his state court remedies, necessarily fails. *Vroman*, 346 F.3d at 605 (finding that petitioner's decision to proceed solely in state court "rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence"); *see Payton*, 256 F.3d at 408 ("The plain language of the statute indicates that an application for state post conviction or other collateral relief does not serve to delay the date on which a judgment becomes final.

---

[3] As for his ineffective assistance of trial counsel claim, the underlying factual predicate of this claim could have been discovered through the exercise of due diligence before the conclusion of direct review in the state court. Piatt acknowledges that he was previously "best friends" with Mr. Siders and that Mr. Siders's romantic relationship with A.M. caused their falling out. (ECF No. 10 at 6). A.M. testified at trial that she had sexual relations with Mr. Siders several hours after her encounter with Piatt. (*See* ECF No. 8-2, PageID #: 447). Piatt indeed subpoenaed Mr. Siders to testify at trial in his defense. As for his second habeas ground, Piatt raised the underlying issue in his direct appeal, clearly indicating he was aware of the underlying facts within the timeframe for filing a timely habeas petition. (ECF No. 1, PageID: # 5, para. 27).

Rather, such limitations merely toll the running of the statute of limitations."). Accordingly, Piatt has not demonstrated that he was diligent in pursuing his federal rights. *Vroman*, 346 F.3d at 605. *See also Davis v. Bradshaw*, 900 F.3d 315, 324 (6th Cir. 2018).

Additionally, Piatt has not demonstrated that he was prevented by some extraordinary circumstance from seeking relief in a timely manner. Piatt is correct in noting that "some courts have recognized that the Covid-19 pandemic could lead to an extraordinary circumstance warranting tolling under certain circumstances." *See, e.g., Pryor v. Erdos*, No. 5:20CV2863, 2021 WL 4245038, at *9 (N.D. Ohio Sept. 17, 2021) (collecting cases). "However, a petitioner seeking tolling on such a basis must still demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition." (*Id.*) (collecting cases). Although the COVID-19 pandemic certainly created unusual circumstances and unfortunately may have required prisoners to put forth more effort to file a habeas petition, the circumstances do not automatically warrant equitable tolling. *United States v. Henry*, No. 2:17-CR-00180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) ("The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion.").

Here, Piatt's only argument is that he could not timely file habeas because he would not have exhausted his state court remedies and, thus, it would have been dismissed. Piatt chose not to file a habeas petition within one year of the finality of his conviction. Piatt cannot rely on delays stemming from COVID-19 pandemic as he wholly fails to demonstrate that he made any effort to timely file his habeas petition and that any fact-specific circumstances stood in his way. (*See* ECF No. 10 at 14-18). Instead, Piatt effectively seeks review of the State court's denial of his petition

12

for post-conviction relief as untimely. (*See id.* (explaining why he could not file a timely petition for post-conviction relief)). Such review is not proper on habeas review. Piatt has therefore failed to demonstrate that he is entitled to equitable tolling and the petition is time-barred.

Consequently, the instant petition should be dismissed.

### D. Actual Innocence

Piatt also argues that the Court should consider his untimely habeas petition under the actual innocence exception.

"A petitioner who presents new evidence that makes it 'more likely than not that no reasonable juror would have convicted him,' may also escape the procedural bar of the statute of limitations." *Burrell v. Place*, No. 15-2432, 2016 WL 2825283, at *2 (6th Cir. May 12, 2016) (quoting *McQuiggin v. Perkins,* 133 S.Ct. 1924, 1935 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995))). Piatt asserts that he is actually innocent and in support includes as "new evidence" several affidavits and a complaint from the Wayne County Count of Common Pleas, Juvenile Division involving an incident that took place on September 25, 2019.[4] Two of the supporting affidavits were from Piatt's sisters, the third was from Mr. Siders. This evidence, however, is neither new nor persuasive.

This Court does not find that Piatt was unavoidably prevented from discovering the information his own sisters could have provided to his defense. The facts contained in one of the affidavits involved a December 2018 family dinner during which Piatt himself was present. The

---

[4] It is unclear whether in this habeas petition Piatt relies solely on Mr. Siders's affidavit or all the proffered "new" evidence from his post-conviction petition. (*See* ECF No. 10 at 20 ("In this case, Mr. Piatt has a credible claim of actual innocence based on new reliable evidence offered through the filing of his July 5, 2022 postconviction petition- the affidavit of Charlie Siders.")). Although Piatt only specifically mentions the Siders Affidavit, in an abundance of caution, this Court addresses each of the proffered evidentiary documents here.

13

facts underlying the second affidavit took place during an August 2018 meeting between Piatt's sister and A.M. – his victim. Piatt has not provided any reason that he was delayed in discovering the underlying facts of the affidavits until 2022.

Similarly, the affidavit of Mr. Siders does not contain any new evidence. Mr. Siders admitted to being sexually involved with A.M. following her encounter with Piatt. According to Mr. Siders, A.M. told him that she had just had sex with Piatt and that he did not believe that A.M. told him that Piatt raped her because he did not understand why she would have had sex with him if she had just been raped by Piatt. This evidence is neither new nor persuasive. On February 19, 2019, Mr. Siders was subpoenaed by defense counsel to appear at trial. This demonstrates that Piatt knew that Mr. Siders had discoverable information that he could potentially use in his defense. Additionally, the evidence contained in the affidavit of Mr. Siders was substantially discussed at trial by State's witness A.M. (*See* ECF No. 8-2, PageID #: 445-447). A.M. testified at trial that she engaged in sexual conduct with Mr. Siders after the incident with Piatt. (*Id.*, PageID #: 444-447). Defense counsel thoroughly cross-examined A.M. regarding the events and her actions on the day of the offense and her actions thereafter. (*Id.*, PageID #: 444-464). This demonstrates Piatt was not unavoidably prevented from discovery of the facts on which he relies in his petition.

Finally, the Wayne County Juvenile Court Complaint is not new persuasive evidence of Piatt's actual innocence. The September 2019 complaint – which Piatt includes in order to indirectly challenge A.M.'s truthfulness about Piatt's conduct on May 10, 2018 – took place well after Piatt's trial and well before he first attempted to introduce it in 2022. The complaint is not relevant as to whether Piatt committed sexual battery against A.M. on May 10, 2018. Additionally, A.M. was crossed examined extensively at trial regarding her truthfulness. (*Id.*, PageID #: 444-464).

14

Moreover, even assuming Piatt's proffered evidence was new, Piatt has not satisfied his burden of establishing a credible claim of actual innocence, because none of the proffered evidence represents "reliable" exculpatory evidence that supports his claim of actual innocence. *See Plaza v. Hudson*, No. 1:07-CV-674, 2008 WL 5273899, at *10 (N.D. Ohio Dec. 17, 2008). Rather, Piatt's proffered evidence merely serves to impeach the testimony of A.M. "[I]mpeachment evidence of the victim's testimony…is insufficient to establish a gateway claim of actual innocence." *Id.* (citing *Webb v. Bell*, No. 2:07-CV-12689, 2008 WL 2242616 (E.D. Mich. May 30, 2008) ("Evidence which merely impeaches a witness is insufficient to support a claim of actual innocence.")).

None of the evidence that Piatt seeks to introduce here is new evidence that makes it more likely than not that no reasonable juror would have convicted him. Thus, Piatt has failed to make a showing of actual innocence that would allow the Court to consider his time-barred claims.

### E. Conclusion

Accordingly, the instant federal habeas corpus petition is barred from review by the one-year statute of limitations governing habeas corpus actions brought pursuant to 28 U.S.C. § 2254. Under the applicable provision set forth in 28 U.S.C. § 2244(d)(1)(A), Piatt's conviction and sentence became final on June 13, 2022. The limitations period began to run on June 14, 2022, and expired one year later on June 14, 2023. Because Piatt has not demonstrated that he is entitled to equitable tolling or made a showing of actual innocence the petition, filed on January 17, 2024, is time-barred.

## VI. Certificate of Appealability

### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on

appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

**B.     Analysis**

Piatt's grounds for relief are barred by the statute of limitations. If the Court accepts the foregoing recommendation, then Piatt has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

**VII.   Recommendation**

Piatt habeas petition is untimely. Thus, I recommend that the Court dismiss his petition in its entirety and not grant him a certificate of appealability.

DATED: August 28, 2024

　　　　　　　　　　　　　　　　　　__*s/Carmen E. Henderson*_____
　　　　　　　　　　　　　　　　　　Carmen E. Henderson
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections

within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).